UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO,

        Plaintiff,                  CIVIL ACTION NO. 10-CV-14554

  vs.                              DISTRICT JUDGE NANCY G. EDMUNDS

CARR, et al.,                 MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:** The Motion for Summary Judgment filed by Defendants Linda Adams, William Czachowrski, Patrick Pavlo, John Hull, Angela (Brauer) Eichorn, Nick Ludwick, and Michael Olson (docket no. 34) should be **GRANTED**, and the Cross-Motion for Summary Judgment filed by Plaintiff (docket no. 45) should be **DENIED**.

The Court further recommends that Plaintiff's Fourteenth Amendment due process claim against Defendant Pavlo (docket no. 1 - Count 5) be dismissed.

Finally, the Court recommends that Plaintiff's Eighth Amendment excessive force claim against Defendant Brauer (docket no. 1 - Count 14) be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**II.**     **REPORT**:

**A.**     **Facts and Procedural History**

Plaintiff Matthew Catanzaro, a state inmate currently incarcerated at the Pugsley Correctional Facility in Kingsley, Michigan, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to Plaintiff's complaint occurred while he was incarcerated at the

1

Mid-Michigan Correctional Facility in St. Louis, Michigan. Among others, Plaintiff sues MDOC employees, Assistant Resident Unit Supervisor ("ARUS") Linda Adams, Resident Unit Officers William Czachowrski, John Hull, and Patrick Pavlo, Officer Angela (Brauer) Eichorn, Former Warden Nick Ludwick, and Assistant Deputy Warden Michael Olson. Plaintiff sues Defendants Adams, Czachowrski, Pavlo, Hull, (Brauer) Eichorn (hereinafter "Brauer"), Ludwick, and Olson in their individual capacities, alleging claims of retaliation and conspiracy. The complaint also alleges that Defendants Pavlo and Adams violated Plaintiff's Fourteenth Amendment right to equal protection of the law (docket no. 1, pp. 28-29 - Counts 4 and 8), Defendant Pavlo violated Plaintiff's Fourteenth Amendment right to due process of the law (docket no. 1, p. 28 - Count 5), and Defendant Brauer violated Plaintiff's Eighth Amendment right to be free from excessive use of force (docket no. 1, p. 30 - Count 14).

In March 2011 Defendants Adams, Czachowrski, Pavlo, Hull, Brauer, Ludwick, and Olson filed the instant Motion for Summary Judgment related to Plaintiff's claims of retaliation and conspiracy. (Docket no. 34). Thereafter Plaintiff filed a Cross-Motion for Summary Judgment and supplemental exhibits that respond to Defendants' motion. (Docket nos. 45, 46, 61, 73). Defendants did not file a response to Plaintiff's Cross-Motion for Summary Judgment and the time for responding has now expired. All pretrial matters have been referred to the undersigned for action. (Docket no. 10). The Court dispenses with oral argument on these matters pursuant to E.D. Mich. LR 7.1(f). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(B).

**B.      Standard**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate where the moving party shows that there is "no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir.2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.     Analysis**

Defendants argue that they are entitled to qualified immunity with regard to Plaintiff's claims of retaliation and conspiracy. In resolving the issue of qualified immunity on summary judgment, the Court should consider (1) whether Plaintiff has shown sufficient facts to make out a violation of a constitutional right, and (2) whether the violation involves clearly established constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

**1.     First Amendment Retaliation Claims**

Plaintiff cites a myriad of ways that Defendants have retaliated against him. Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse

action was motivated at least in part by the plaintiff's protected conduct." *Id.* (citations omitted). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. . . .If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* at 399 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)).

Plaintiff alleges that he filed numerous grievances and lawsuits against MDOC staff. Filing grievances and lawsuits is protected conduct under the First Amendment. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000) (citation omitted). Plaintiff has therefore satisfied the first prong of his retaliation claim.

*A.    Defendant Adams*

Plaintiff alleges that Defendant Adams made threatening, humiliating, and intimidating statements to him (docket no. 1, ¶¶ 75-79, 85, 92, 110, 114-115), threatened to have him transferred to a higher security facility, then authorized his transfer (docket no. 1, ¶¶ 77, 79, 85, 114-115, 117), falsified his Parole Eligibility Report (docket no. 1, ¶¶ 80-86), refused to provide Plaintiff with expedited legal forms (docket no. 1, ¶¶ 89-92), fabricated two major misconduct reports against him (docket no. 1, ¶¶ 97-102), instructed subordinates to write major misconduct tickets against him (docket no. 1, ¶ 106), and lied in her grievance responses (docket no. 1, ¶ 110). Defendant Adams allegedly engaged in this behavior in retaliation against Plaintiff for filing grievances and lawsuits against MDOC staff.

First Plaintiff argues that Defendant Adams threatened to have him transferred to a higher security level facility, then authorized his transfer. MDOC Policy Directive 05.01.140 provides that

transfers are initiated by a Security Classification Committee. (Docket no. 34, ex. F at ¶ B). Transfers that involve an increase in prison security level must be approved by the Correctional Facilities Administration ("CFA") Deputy Director. (Docket no. 34, ex. F at ¶ D(2)). Under appropriate circumstances, the Warden may also authorize the transfer of a prisoner. (Docket no. 34, ex. F at ¶ F).

The evidence in this case shows that Defendant Adams completed a Security Classification Screen in relation to Plaintiff's transfer. (Docket no. 45, ex. 13). The screen was reviewed by Adam's supervisor and was approved by Defendant Ludwick. Defendant Ludwick states in his affidavit that he was the Warden of the Mid-Michigan Correctional Facility during all times relevant to the complaint and he authorized Plaintiff's transfer in order to facilitate a trade initiated by the Pine River Correctional Facility. (Docket no. 34, ex. F). Defendant Ludwick attests that Plaintiff's transfer was conducted in accordance with MDOC policy and was approved by CFA. (Docket no. 34, ex. F). In her affidavit, Defendant Adams states that she has no control over inmate transfers. (Docket no. 34, ex. A). This statement is consistent with the evidence. Plaintiff has failed to demonstrate a genuine issue of fact that Defendant Adams authorized a prison transfer in retaliation against Plaintiff.

Next, Plaintiff alleges that Defendant Adams falsified two major misconduct reports against Plaintiff for insolence and disobeying a direct order. Plaintiff claims that he was found guilty of the misconduct and received fourteen days loss of privileges. (Docket no. 1, ¶ 102). In *Ingram v. Jewell*, 94 Fed. Appx. 271 (6th Cir.2004), the Sixth Circuit found that fourteen days of lost privileges does not constitute an adverse action for purposes of a retaliation claim. *Id.* at 273. Furthermore, a prisoner cannot prevail on a retaliation claim that is based on false allegations in a

5

misconduct report when the prisoner is found guilty of the misconduct. *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir.2005) (citing *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994)) ("[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.' "). Plaintiff's allegations that Defendant Adams falsified misconduct reports cannot support his claim of retaliation.

Plaintiff next asserts that Defendant Adams falsified his Parole Eligibility Report by including in the report a major misconduct ticket that allegedly showed that Plaintiff received a security level increase from level one to level two. Plaintiff also argues that Defendant Adams failed to record other pertinent information on his report. In her affidavit, Defendant Adams states that she does not add major misconduct tickets to Parole Eligibility Reports or delete them from a report because they are automatically downloaded to the report from a computer file. (Docket no. 34, ex. A). Adams further states in her affidavit that she reviewed the Parole Eligibility Report with Plaintiff in detail and asked him to verify the information contained in the report, which she claims he did. Plaintiff has not provided sufficient evidence to raise a genuine issue of material fact related to this allegation.

Plaintiff alleges that Defendant Adams made threatening statements in retaliation for his grievance and lawsuit activity. Verbal abuse and threats are not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. *Carney v. Craven*, 40 Fed. Appx. 48, 50 (6th Cir.2002). Accordingly, Plaintiff cannot sustain his claim based on allegations of verbal threats.

Finally, Plaintiff makes blanket assertions without providing sufficient evidence to show that Defendant Adams refused to provide him with legal forms, instructed subordinates to write major misconduct tickets against him, conducted an improper hearing on his misconduct tickets, and

falsified grievance responses in retaliation against Plaintiff. Throughout his complaint Defendant recites a litany of wrongdoing inflicted upon him by Defendant Adams and simply alleges the ultimate fact of retaliation. His claim of retaliation against Defendant Adams should be dismissed as speculative and conclusory.

   B.   *Defendants Czachowrski, Hull, and Olson*

Plaintiff alleges that Defendants Czachowrski and Hull issued two minor misconduct reports against Plaintiff for being out of place. (Docket no. 1, ¶¶ 104-105). He claims that he was found guilty on both misconduct tickets and was given a total of seventeen days loss of privileges. (Docket no. 1, ¶ 107). He states that he appealed the guilty findings to Defendant Olson, who upheld the findings of guilt. (Docket no. 1, ¶ 108). Plaintiff now claims that he was not out of place and that Defendants Czachowrski, Hull, and Olson simply retaliated against him because of his grievance and lawsuit activity. Since Plaintiff's loss of privileges does not constitute adverse action, and because Plaintiff was found guilty of the misconduct for which he was charged, Defendants Czachowrski, Hull, and Olson are entitled to summary judgment on this claim. *See Ingram v. Jewell*, 94 Fed. Appx. at 273; *Jackson v. Madery*, 158 Fed. Appx. at 662.

   C.   *Defendant Ludwick*

Plaintiff alleges that Defendant Ludwick authorized his transfer to Pine River Correctional Facility on December 1, 2009 for retaliatory purposes. (Docket no. 1, ¶¶ 116-118). As indicated above in relation to Plaintiff's claims against Defendant Adams, the record shows that Defendant Ludwick authorized Plaintiff's transfer in order to facilitate a trade initiated by the Pine River Correctional Facility. (Docket no. 34, ex. F). The record shows that the transfer was authorized by Correctional Facilities Administration in accordance with MDOC Policy. Plaintiff has not shown

otherwise. Plaintiff's conclusory allegations of retaliation are not sufficient to raise a genuine issue of material fact against Defendant Ludwick.

   D.  *Defendant Brauer*

Plaintiff alleges that Defendant Brauer acted with hostility toward him by requiring him to get up from his bed to retrieve his mail (docket no. 1, ¶ 30), provided Plaintiff with an incorrect classification CSX-175 form (docket no. 1, ¶ 33), failed to notify him of his legal mail and copy corrections (docket no. 1, ¶¶ 40, 44), fabricated a retaliatory Roberta R CHX-212 form (docket no. 1, ¶ 46), and wrote a retaliatory minor misconduct ticket against him (docket no. 1, ¶ 54). Plaintiff asserts that Defendant Brauer engaged in this behavior to punish Plaintiff for filing grievances and lawsuits against MDOC staff.

The affidavit of Defendant Brauer reveals that Defendant Brauer requires all prisoners to get up from their beds to receive their mail. (Docket no. 34, ex. E). Brauer's affidavit further states that her only role with regard to Classification CSX-175 forms was to hand the forms to prisoners and instruct them to review the forms and make necessary corrections. Defendant Brauer attests that the ARUS and Classification Director are responsible for documentation issues on CSX-175 forms. (Docket no. 34, ex. E). She states that she is not aware of whether Plaintiff spoke with the Classification Director about his form. (Docket no. 34, ex. E). Additionally, Brauer's affidavit states that she does not recall receiving a telephone call asking her to send Plaintiff to retrieve his legal mail. If she had received a telephone call, however, and had failed to send Plaintiff to collect his mail, officer's would have continued to receive calls alerting them that Plaintiff had legal mail. (Docket no. 34, ex. E). Plaintiff has not submitted sufficient evidence to substantiate his claims that Defendant Brauer took adverse action against Plaintiff by engaging in the above stated behavior and

8

did so in retaliation because Plaintiff was engaged in protected conduct. Based on this record the Court should find that no reasonable jury could rule in favor of Plaintiff on these allegations.

Next, Plaintiff argues that Defendant Brauer fabricated a retaliatory Roberta R CHX-212 form and wrote a retaliatory minor misconduct ticket against him. In her affidavit, Defendant Brauer contends that she does not recall sending a psychological evaluation referral, otherwise known as a Roberta R CHX-212 form, but that if she had she could report that Plaintiff at times displayed paranoia, would get angry for no apparent reason, and would stand and stare and appear dazed. (Docket no. 34, ex. E). Plaintiff has not produced the psychological referral form or provided evidence to support his claims that the statements allegedly made on the form were made for purposes of retaliation. Likewise, there is insufficient evidence in the record to substantiate Plaintiff's claims that Defendant Brauer fabricated a July 5, 2009 minor misconduct ticket against him in retaliation for his participation in protected activity. (Docket no. 61, ex. 2-A).

### E. *Defendant Pavlo*

Plaintiff alleges that Defendant Pavlo threatened to write false misconduct reports against him (docket no. 1, ¶ 57), conducted shake downs of his cube in order to turn Plaintiff's cube mates against him (docket no. 1, ¶¶ 58-61), and filed a false misconduct ticket against him after Plaintiff complained that Defendant Pavlo made sexual gestures toward him while Plaintiff was in the shower (docket no. 1, ¶¶ 64-68).

As with Plaintiff's claims against the other named Defendants, the Court has thoroughly reviewed the parties' motions, briefs, exhibits, and affidavits, including the prisoner affidavits filed in support of Plaintiff's claims. (Docket nos. 34, 45, 61). In support of his motion, Defendant Pavlo submitted a copy of a Major Misconduct Hearing Report showing that Plaintiff was charged with

9

being out of place on July 25, 2009. (Docket no. 34, ex. H). According to the Hearing Report, during an August 12, 2009 hearing on the misconduct ticket Plaintiff presented his statement and the statements of several prisoners whom agreed that Plaintiff remained on his bunk until count cleared. The Hearing Officer also reviewed evidence showing that Plaintiff was off his bunk during count. The Hearing Officer concluded that the misconduct report was not fabricated and upheld the charge. (Docket no. 34, ex. H). Additionally, the Hearing Officer concluded that Plaintiff's assertion that the report was retaliatory was unsubstantiated. (Docket no. 34, ex. H). Plaintiff was sentenced to two days loss of privileges. Based on this record, Plaintiff cannot prevail on a retaliation claim that is based on the filing of this misconduct report. *See Ingram v. Jewell*, 94 Fed. Appx. at 273; *Jackson v. Madery*, 158 Fed. Appx. at 662.

Next, Plaintiff alleges that Defendant Pavlo threatened to write false misconduct reports against him and conducted shake downs of his cube in order to turn Plaintiff's cube mates against him. A prisoner affidavit filed by Plaintiff states that Defendant Pavlo threatened to take the prisoner's television and shake him down in retaliation for Plaintiff grievance related activities. (Docket no. 45, ex. 8). Allegations of verbal harassment and threats do not rise to the level of adverse action for purposes of a § 1983 claim. *Carney v. Craven*, 40 Fed. Appx. 48, 50 (6th Cir.2002). Accordingly, Plaintiff cannot base his First Amendment retaliation claim on Defendant Pavlo's alleged threats.

**2.     Conspiracy Claims**

Plaintiff asserts vague and conclusory allegations that Defendants Adams, Czachowrski, Pavlo, Hull, Brauer, Ludwick, and Olson engaged in conspiracies to retaliate against Plaintiff. Because Plaintiff's allegations of conspiracy are speculative and are unsupported by the facts and

evidence, the Court should dismiss Plaintiff's conspiracy claims against these Defendants.

**3.     Due Process Claim Against Defendant Pavlo**

Plaintiff alleges that Defendant Pavlo violated his Fourteenth Amendment right to due process of law by fabricating a retaliatory major misconduct ticket against Plaintiff after Plaintiff complained that Defendant Pavlo made inappropriate sexual gestures toward him while Plaintiff was in the shower. (Docket no. 1, p. 28- Count 5 and ¶¶ 64-69).  An inmate is deprived of a liberty interest under the due process clause when his deprivation extends the duration of his sentence or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Defendants did not address Plaintiff's due process claim in their Motion for Summary Judgment.  However, as discussed above in the section pertaining to Defendant Pavlo, the evidence before the Court shows that Defendant Pavlo issued a Major Misconduct Report against Plaintiff for being out of place. (Docket no. 34, ex. H). At the conclusion of a misconduct hearing, Plaintiff was found guilty of the misconduct and was sentenced to two days loss of privileges. (Docket no. 34, ex. H).  The evidence does not show that the sanctions extended the duration of Plaintiff's sentence or imposed an atypical and significant deprivation that would trigger the protection of the due process clause.  Accordingly, Plaintiff's due process claim against Defendant Pavlo should be dismissed.

**4.     Excessive Force Claim Against Defendant Brauer**

Plaintiff alleges that Defendant Brauer spread rumors that Plaintiff was incarcerated for placing his genitals on a four-year-old child's plate while he was at a restaurant. Defendant Brauer purportedly made this statement to Plaintiff and Resident Unit Officer Bott while they were in a

prison office. (Docket no. 1, ¶ 27). The complaint further alleges that Plaintiff was assaulted by an inmate two months after Defendant Brauer made this statement to Plaintiff and RUO Bott. Plaintiff claims that the inmate who assaulted him informed him that Defendant Brauer told him that Plaintiff exposed himself to a child. (Docket no. 1, ¶¶ 31-32). Plaintiff now alleges that Defendant Brauer caused the inmate assault. Plaintiff raises this allegation in relation to an Eighth Amendment excessive force claim against Defendant Brauer. (Docket no. 1, Count 14 - addressing ¶¶ 31-32 of the complaint).

"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation and quotation marks omitted). In order to establish liability for a prison official's failure to protect an inmate, the prisoner must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* at 834. He must also demonstrate that the prison official acted with deliberate indifference to his safety. *See Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir.2004). To demonstrate deliberate indifference, an inmate must allege and show that the prison official was subjectively aware of an excessive risk to the inmate's health or safety, and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837.

Plaintiff has failed to allege facts to show that Defendant Brauer personally engaged in the assault, knew of the impending assault and failed to take steps to prevent it, or was subjectively aware that spreading a rumor that Plaintiff exposed himself to a child subjected Plaintiff to an excessive risk of harm. Plaintiff has therefore failed to state a plausible claim for relief on his Eighth Amendment excessive force claim against Defendant Brauer. The Court should dismiss this claim against Defendant Brauer pursuant to 28 U.S.C. § 1915A(b)(1) and this Court's authority to dismiss

any portion of a prisoner complaint that fails to state a claim upon which relief may be granted.

**5.      Conclusion**

For the reasons stated above, Plaintiff has failed to demonstrate that Defendants Adams, Czachowrski, Pavlo, Hull, Brauer, Ludwick, and Olson conspired against him and violated his First Amendment rights, or that Defendant Pavlo violated Plaintiff's Fourteenth Amendment right to due process of the law.  There being insufficient evidence of a constitutional violation, these Defendants "have no need of qualified immunity and are actually entitled to summary judgment as a matter of law" as to these claims.  *Chappell v. City of Cleveland*, 585 F.3d 901, 916 (6th Cir.2009). Additionally, Plaintiff has failed to state a cognizable claim for relief against Defendant Brauer for excessive force in violation of the Eighth Amendment of the United States Constitution. Accordingly, Defendants Czachowrski, Hull, Brauer, Ludwick, and Olson should be dismissed from this lawsuit.

With regard to the Defendants in this motion, Plaintiff's Fourteenth Amendment equal protection claims against Defendant Adams (docket no. 1 - Count 8) and Pavlo (docket no. 1- Count 4), in which Plaintiff relies on a class of one theory, are still pending.  Pursuant to E.D. Mich LR 7.1(b), Defendants Adams and Pavlo must obtain leave of Court if they intend to file a second Motion for Summary Judgment on the equal protection claims.

**III.     NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of*

*Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: September 21, 2011          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Matthew Catanzaro and Counsel of Record on this date.

Dated: September 21, 2011          s/ Lisa C. Bartlett
                                   Case Manager